IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN FRAYNE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 5290 |
| ) | |
| CHICAGO 2016 and UNITED STATES ) | |
| OLYMPIC COMMITTEE, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Stephen Frayne has sued Chicago 2016 and the United States Olympic Committee (USOC) for declaratory relief regarding various trademarks and for several alleged federal and state constitutional violations. His claims stem from the USOC's pursuit of an action against him before the World Intellectual Property Organization (WIPO). Chicago 2016 and the USOC have filed counterclaims asserting violations of Lanham Act, 15 U.S.C. § 1114(1), the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), and the Ted Stevens Olympic and Amateur Sports Act (Stevens Act), 36 U.S.C. § 220506(c).[1]

Chicago 2016 and the USOC have moved for summary judgment on their ACPA and Stevens Act claims as well as Frayne's constitutional claims. For the following

---

[1]Frayne settled his claims against Domain Trade, Inc., which he originally named as a defendant.

1

reasons, the Court grants the motion in part and denies it in part.

**Facts**

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

On August 8, 2004, Frayne registered the domain name chicago2016.com through Register.com. Between 2002 and 2008, Frayne registered over 1000 other domain names consisting of a city and year combination with the dot-com designation. Frayne contends that his purpose in registering these domain names was to provide a forum for balanced discussion about the pros and cons of hosting the Olympic games. When he registered chicago2016.com, Frayne provided olympicsites@yahoo.com as his e-mail address.

Register.com, pursuant to an agreement with Skenzo RAK, Inc., links newly registered domain names to "parking pages" provided by Skenzo. Domain name registrants may link their domain names to other content, but the default is a Skenzo parking page. The parking pages, which can generate revenue for both Register.com and Skenzo, feature links to Skenzo customers. Domain name registrants do not share in any revenue. Chicago2016.com was linked to a parking page after Frayne registered it. The parking page link remained until shortly after July 10, 2008, when it was replaced by a page stating "Future Home of CHICAGO2016.COM."

Mark Mitten registered the domain name Chicago2016.org on August 12, 2004. Jeffrey Stiers, Vice President of Technology for Chicago 2016, testified during his

deposition that he assumed Mitten registered that domain name because chicago2016.com was already taken. Mitten later became the Chief Branding Officer for Chicago 2016.

In 2006, Chicago 2016 was incorporated to promote the City of Chicago's bid for 2016 Olympics. Chicago 2016 filed for a trademark on the phrase "Chicago 2016," which the U.S. Patent and Trademark Office (PTO) registered on April 22, 2008. Chicago 2016 later assigned its rights in the trademark to the USOC, which licensed the use of the mark back to Chicago 2016. The USOC applied for a separate trademark on Chicago 2016, which the PTO registered on May 5, 2009.

On April 14, 2007, the USOC selected Chicago as its bid city for the 2016 Olympics. On October 10, 2007, Stiers first contacted Frayne to discuss Chicago2016.com. During a meeting in November 2007, Stiers mentioned a WIPO ruling concerning the Madrid2012.com domain name. Frayne informed Stiers that his intent was to provide a forum for discussion about the possibility of hosting the games in Chicago and that he was not interested in selling the domain name.

In June 2008, Domain Trade, Inc., acting on behalf of the Tokyo organizing committee, inquired about the possible sale of Frayne's Tokyo2016.com domain name. Frayne responded that the domain name was not for sale. On July 10, 2008, Domain Trade informed Frayne that it was considering filing a complaint before the WIPO under the Uniform Domain Name Dispute Resolution Policy.

On July 15, 2008, defendants filed a WIPO complaint against Frayne, seeking the transfer of the chicago2016.com domain name.

Beginning in August 2008, the chicago2016.com website began to display

articles and other content related to the advantages and disadvantages of hosting the Olympic games. The site now displays many articles and some video, including a roundtable discussion on the topic. Each page of the site features disclaimers in several languages warning that it is not the official site of the Chicago Olympic bid and that it has no association with the USOC.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**A.	Stevens Act**

The Stevens Act grants the USOC exclusive rights over the use of certain words and symbols. 36 U.S.C. § 220506(a). "The protection granted to the USOC's use of the Olympic words and symbols differs from the normal trademark protection in two respects: the USOC need not prove that a contested use is likely to cause confusion, and an unauthorized user of the word does not have available the normal statutory defenses." *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483

U.S. 522, 531 (1987). Equitable defenses, such as laches, remain available. *Id.*

The Stevens Act also provides that the USOC "may file a civil action against a person for the remedies provided in [the Trademark Act of 1946], if the person, without the consent of [the USOC], uses for the purpose of trade, to induce the sale of any goods or services . . . any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by [the USOC]." 36 U.S.C. § 220506(c)(4). "To the extent that [the Stevens Act] applies to uses 'for the purpose of trade [or] to induce the sale of any goods or services,' its application is to commercial speech." *San Francisco Arts & Athletics*, 483 U.S. at 535 (quoting 36 U.S.C. § 220506(c)).

1. **Commercial speech**

Defendants argue that Frayne's registration of chicago2016.com violates the Stevens Act because the domain name is a mark falsely representing association with the USOC, and Frayne used it to induce the sale of goods and services.[2] Defendants contend that Frayne allowed Register.com to attach to the domain name a parking page that displayed links to commercial sites.

Frayne contends that his site is now noncommercial. Defendants' Stevens Act claim is directed, however, at Frayne's website as it stood before July 2008. As a result, the current content of Frayne's site is not at issue in connection with the present

---

[2]Both parties appear to assume that the Court made a definitive ruling on protected status of Chicago 2016. It did not. Rather the Court ruled that defendants had alleged facts sufficient to survive Frayne's motion for judgment on the pleadings with respect to the mark's protectability. *Frayne v. Chicago 2016*, No. 08 C 5290, slip op. at 3-4 (N.D. Ill. June 26, 2007).

5

motion.

Frayne's use of the domain name before July 2008, defendants contend, amounted to commercial speech. In support of this contention, defendants have produced a printout of the parking page as it appeared on June 20, 2008. The printout shows links entitled "Olympic tickets" and "Computer notebooks," among others. Mot. Ex. 28. Defendants also cite to an agreement between Register.com and Skenzo to display parking pages at domain names that have been registered by Register.com. This agreement was in place at the time the parking page appeared on Frayne's site.

Commercial speech is speech that "does no more than propose a commercial transaction." *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340 (1986). Frayne contends that there is no evidence that the links that appeared on the parking page were commercial in nature. The agreement between Register.com and Skenzo provides, however, that the links displayed on the parking pages will lead to the websites of Skenzo's customers and that Skenzo and Register.com will share in any advertising revenue generated from hits to those websites. Under these circumstances, no reasonable fact-finder could conclude that the parking page was not commercial speech.

It is undisputed that the parking page was displayed at the chicago2016.com website for some time before July 2008. It is also undisputed that Frayne did not receive any revenue from the parking page. It is unclear, however, whether Frayne had any knowledge of the content of the website or consented to Register.com's posting of the parking page there. Frayne states in an affidavit that he does not recall seeing the parking page at any time until he began developing the site in the summer of 2008.

Defendants cite to an affidavit by an employee of Register.com stating that although newly registered domain names are automatically directed to a parking page under the sole control of Register.com, domain registrants have the option of disabling the parking page. Essentially, the parking page is the default setting.

The Stevens Act provides for liability only "if the person uses" a protected mark for the purpose of trade or to induce the sale of any goods or services. 36 U.S.C. § 220506(c). Thus, the statute requires utilization of a protected mark for a prohibited purpose by the person against whom liability is asserted. If a person allowed someone else to make use of a mark—in this case a domain name—for the purpose of trade, that likely would run afoul of the Stevens Act. But the Court cannot (or at least cannot yet) determine that such use by a third party without the consent or awareness of the holder of the mark or domain name constitutes use by that person.

Though Frayne may have had the ability to direct the website toward noncommercial content, the evidence is inconclusive on the issue of awareness of how his website was being used. The affidavit submitted by defendants does not state that registrants are notified of the contents of the parking page. Thus, a reasonable fact-finder could conclude that Frayne was unaware the parking page would be displayed and therefore did not "use" the mark for the purpose of trade or to induce the sale of any goods or services.

### 2. Falsely representing association with the USOC

Because there are genuine factual issues precluding summary judgment on the issue of whether Frayne used the Chicago 2016 term for trade or to induce the sale of goods or services, defendants are not entitled to summary judgment on their Stevens

7

Act claim. The Court will address, however, the other element of that claim because it bears on the course of further proceedings in this case.

Defendants contend that the chicago2016.com domain name uses the mark Chicago 2016 in a way that falsely represents association with the USOC, because the city-plus-year format has been closely associated with the Olympic games for decades. Frayne contends that although it is common knowledge that the Olympic games will take place in some city every four years, the Stevens Act does not automatically protect every city-plus-Olympic-year combination.[3] Frayne also contends that he never represented that he was associated with the USOC and that he has included disclaimers on his website that deny any association with the USOC.

As an initial matter, there is no dispute that the disclaimers Frayne posted on his website were not in place before July 2008. Thus, his current disclaimers do not affect the determination of whether chicago2016.com falsely represented an association with the USOC before July 2008.

Defendants cite *United States Olympic Comm. v. Xclusive Leisure & Hospitality Ltd.*, No. C 08-3514, 2008 WL 3971120 (N.D. Cal. Feb. 19, 2009), for the proposition that city-plus-year combinations are protected under the Stevens Act. Their reliance on that case is problematic for two reasons. First, the case involved the fraudulent sale of

---

[3] Frayne asks the Court to reconsider its ruling on his motion for judgment on the pleadings. *See Frayne, supra* n.2, slip op. at 4-5. He contends that the Court erred in finding that the Chicago 2016 mark could be protected under the Stevens Act. The Court disagrees. Although the Stevens Act provides automatic protection for specific words and symbols, it also allows the USOC to pursue a civil action for prohibited uses of other trademarks, trade names, signs, symbols, or insignia that falsely represent an association with the USOC. 36 U.S.C. § 220506(c)(4). The phrase Chicago 2016 may be protected under the Stevens Act if it meets that standard.

tickets to events at the Beijing games in 2008.  The term Beijing 2008, at the time the defendant used it, was a reference to an actual Olympic game, not merely to a potential bid for a future Olympic games.  Second, though the court in *Xclusive Leisure* stated that the term Beijing 2008 was protected under the Stevens Act, it provided no analysis to support that conclusion.  *Id.* at *8.  For these reasons, and because it is not controlling authority, the Court need not follow *Xclusive Leisure* on this point.

The Stevens Act does not require that a person claim an association with the USOC to be held liable.  Rather, the statute prohibits the use of "any trademark, trade name, sign, symbol, or insignia falsely representing association with [the USOC]."  36 U.S.C. § 220506(c)(4).  Thus, if a term itself falsely represents an association with the USOC, the commercial use of that term is prohibited under the Stevens Act.

That said, a city-plus-Olympic-year combination is not, without more, automatically protected under the Stevens Act.  The Act protects trademarks, trade names, and the like that falsely represent association with the USOC.  Were a person to register, today, the domain name "newyork2024.com," that would not imply or falsely represent association with the USOC.  A contrary holding would stretch the coverage of the Stevens Act beyond recognition.  Nothing in the Act's language or history suggests that it protects, without more, all city-plus-Olympic-year combinations that someday be connected with a future Olympic games or with a city's not-yet-made bid to host a future Olympic games.

On the other hand, it is undisputed that certain city-plus-Olympic-year combinations can and do acquire, at some point, an association with the USOC and with the Olympic movement generally.  For this reason, the use of the city-plus-

9

Olympic-year combination can come to represent a claimed association with the USOC. With the Chicago 2016 designation, it is likely that association came into being by April 2007, when the USOC selected Chicago as its candidate city for the 2016 Olympic games. Defendants, however, do not make that argument. Rather, in their briefs on the motion they rely exclusively on the categorical contention that all city-plus-Olympic-year combinations, without more, are protected under the Stevens Act. The Court has rejected that contention. Thus determination of exactly when an association with the USOC came into being in this case will have to await further proceedings.

**B.   ACPA**

The ACPA provides that:

A person shall be liable in a civil action by the owner of a mark, . . . if, without regard to the goods or services of the parties, that person

> (i) has a bad faith intent to profit from that mark, . . . and registers, traffics in, or uses a domain name that—
>
> . . .
>
> (III) is a trademark, word, or name protected by reason of [the Stevens Act].

15 U.S.C. § 1125(d)(1)(A). Defendants' ACPA claim is necessarily dependent on a finding that the term Chicago 2016 is protected under the Stevens Act. Because the Court has concluded that determination of that issue must await further proceedings, summary judgment is inappropriate on defendants' ACPA claim.

In any event, there are genuine issues of material fact regarding whether Frayne had a bad faith intent to profit from his use of Chicago 2016, an element necessary to prove liability under the ACPA. The ACPA requires the Court to consider nine factors to

determine whether there was a bad faith intent to profit. *Id.* § 1125(d)(1)(B)(I). "There is no simple formula for evaluating and weighing these factors." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). Nevertheless, "courts must ultimately weigh the facts of each case and make a determination based on those facts." *Id.*

There are factual disputes concerning several of the nine factors. For example, one of the factors is whether the user of a mark has an "intent to divert customers from the mark's owner's online location . . . by creating a likelihood of confusion as to the source of sponsorship, affiliation, or endorsement of the site." *Id.* § 1125(d)(1)(B)(i)(V)-(VI). Frayne contends that he registered Chicago2016.com and other domain names to provide a forum for a balanced discussion of the pros and cons of hosting the games in a given city. He also contends that he contacted an economist about developing content for the site before defendants threatened a WIPO action. After the WIPO action was filed, Frayne posted disclaimers on every page of his site stating in several languages that the site was not the official site of the Chicago 2016 Olympic bid. Frayne also instituted a protocol that bars visitors who think that the site is the official site of the bid.

Frayne contends that his actions demonstrate that his intent was not to divert customers from the official site and that he has done everything possible to avoid confusion as to the site's affiliation or sponsorship. Defendants contend that Frayne only took those actions in response to the WIPO suit and that Frayne's choice of Chicago2016.com, rather than some other domain name, demonstrates that he intended to divert customers who wanted to reach the official site. This boils down to

an issue of credibility.

For this and other reasons, a reasonable fact-finder could conclude that Frayne did not have a bad faith intent to profit from the mark. Summary judgment in defendants' favor on the ACPA claim is therefore inappropriate.

**C.    Laches**

A party who asserts a defense of laches must demonstrate two things: "(1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999). Frayne contends that a presumption of laches applies in this case because defendants asserted their claims after the analogous state statute of limitations had run. *See id.* at 821.

Defendants contend that Frayne has produced no evidence that he was prejudiced from any delay in bringing the suit. Frayne contends that he was prejudiced by defendants' delay because he decided not to challenge Chicago 2016's trademark application. Had he been aware that defendants intended to pursue this lawsuit, Frayne contends, he would have opposed the application on the grounds that Chicago 2016 was not the proper applicant. Even if Frayne would have opposed such an application, he has not been prejudiced in the way required to establish laches. The USOC applied for a separate trademark for Chicago 2016, which the USPTO recently registered. Reply Ex. 5. The application was published for opposition June 3, 2008, around the time that defendants first threatened a WIPO action against Frayne. Frayne did not oppose the application. Under the circumstances, no reasonable fact-finder could conclude that Frayne was prejudiced by any delay on the part of defendants in

12

asserting their claims.

**D.     Constitutional claims**

Frayne alleges that defendants have violated his federal and state constitutional rights by instituting the WIPO action against him in a discriminatory manner. Defendants contend that they are immune from Frayne's federal and state constitutional claims by virtue of the *Noerr-Pennington* doctrine and analogous state immunities.[4]

The *Noerr-Pennington* doctrine protects the right to petition the government for redress through the judicial process. *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007). "*Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is now understood as an application of the first amendment's speech and petitioning clauses." *Id.* Thus, a person cannot be held liable simply for pursuing a lawsuit, unless the suit was a "mere sham." *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). The sham litigation exception to *Noerr-Pennington* immunity requires a court to determine first whether the lawsuit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.*

Frayne contends that the filing of the WIPO suit was a sham and that the real

---

[4]Frayne contends that defendants' motion on these issues is nothing more than a veiled motion for reconsideration of the Court's ruling on their motion to dismiss. The Court disagrees. Although the Court concluded that Frayne had alleged enough to survive the motion to dismiss, the Court stated that "it may be appropriate for Chicago 2016 to move for summary judgment on this issue at a later date." *Frayne v. Chicago 2016*, No. 08 C 5290, 2009 WL 65236, at *4 (N.D. Ill. Jan. 8, 2009).

motivation behind defendants' filing of the suit was to silence any criticism of Chicago's bid for the Olympic games. Defendants have cited several cases in which WIPO ruled in favor of Olympic-related entities like the USOC on issues involving rights to domain names containing city-plus-year combinations. Defendants contend that the WIPO action was not objectively meritless because a reasonable litigant would have believed, based on the earlier rulings, that it had a good chance of success. Although Frayne contends that these cases are distinguishable from his, he has not explained how or why. Given the WIPO precedent, no reasonable fact-finder could conclude that the suit was objectively baseless. Thus, the sham litigation exception does not apply, and the defendants are immune under the *Noerr-Pennington* doctrine.

Frayne's state constitutional claims are also subject to conditional immunity. Much like *Noerr-Pennington*, this immunity does not apply if the defendant acted out of actual malice. *Prince v. Zazove*, 959 F.2d 1395 (7th Cir. 1992) (citing *Arlington Heights Nat'l Bank v. Arlington Heights Federal Savings & Loan Assoc.*, 37 Ill. 2d 546, 229 N.E.2d 514, 518 (1967)). "The evidence must show that the defendant acted with a desire to harm unrelated to the interest that the defendant was presumably seeking to protect." *Id.*

Frayne contends that defendants' failure to file suit against the holder of chicago2016.net, a site that contains content supportive of Chicago's bid, demonstrates that defendants acted with actual malice.[5] Defendants contend that they are unaware

---

[5] Although the owner of the chicago2016.net domain name approached at least one Olympic sponsor in 1994 and represented that he was associated with the USOC, Frayne has produced no evidence that this individual has since represented that he is associated with the USOC.

of any commercial content on chicago2016.net that would enable them to pursue a WIPO action against that site's owner as they did against Frayne. A printout of chicago2016.net provided by Frayne supports defendants' contention that the site is noncommercial in nature.

Absent evidence of commercial content on chicago2016.net—which Frayne has not offered—no reasonable fact-finder could conclude that defendants' failure to pursue that site or its owner is evidence that would suggest a desire to harm Frayne unrelated to the protection of their interest in protecting the Chicago 2016 trademark. Because Frayne has pointed to no other evidence from which malice could be inferred, no reasonable fact-finder could find that malice exists.

### Conclusion

For these reasons, the Court grants defendants' motion for summary judgment [docket no. 60] with respect to plaintiff's federal and state constitutional claims and his laches defense. The Court denies defendants' motion with respect to the ACPA and Stevens Act claims. Plaintiff's motion for extension of time to complete discovery is terminated as moot [docket no. 66]. The case is set for a status hearing on October 14, 2009 at 9:30 a.m. for the purpose of setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: October 2, 2009